UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FARHAN AHMED, | ) |
| | ) |
| Plaintiff, | )   Case No. 21-cv-18-JFH-CDL |
| v. | ) |
| | ) |
| DONALD LAWSON, Osage County | ) |
| Sheriff Deputy; MICHAEL FISH, | ) |
| Osage Nation Police Department; and | ) |
| DIANE HANMER, Osage County | ) |
| District Attorney, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Before the Court by referral of Chief District Judge John F. Heil are the motions to dismiss filed by defendants Donald Lawson (Doc. 10),[1] Diane Hanmer (Doc. 12), and Michael Fish (Doc. 16). Despite the passage of over two years since the filing of the dismissal motions, the plaintiff has not filed any responses to the motions or taken any other action to attempt to prosecute this action. Upon consideration of the motions and applicable law, the Court **recommends** that the dismissal motions be **granted** and the plaintiff's claims be **dismissed without prejudice**.

**I.    Plaintiff's Claims**

In his "Complaint for Violation of Civil Rights" (Doc. 1), the plaintiff, Farhan Ahmed, sued Diane Hanmer as Osage County District Attorney, Donald Laxson, as Osage

---

[1] The Complaint lists "Donald Lawson" as a defendant (Doc. 1 at 2), but the Summons was issued to "Donald Laxson." (Doc. 5). According to that defendant, his correct name is Donald Laxson, which will be used hereinafter.

County Sheriff Deputy, and Michael Fish, as Osage Nation Police Department. (*Id.* at 2-3). The Complaint indicates that all defendants are sued in their individual and official capacities. (*Id.*). Mr. Ahmed asserts that the defendants violated the Fourth, Fifth, and Sixth Amendments to the United States Constitution, and he also cites *Okla. Stat.* "§ 21-781" and "21-771." (*Id.* at 3). Plaintiff utilized the form Complaint for Violation of Civil Rights, which is utilized by pro se plaintiffs to sue government officials under 42 U.S.C. § 1983. (*See* Doc. 1).

Mr. Ahmed claims that, on August 5, 2019, he was "assaulted by [his] ex-girlfriend and she damaged [his] automobile by purposely using her automobile to ram into [his]." (*Id.* at 5). He called 911, and about 45 minutes later, "Tribal and Local Deputy arrived," asked him questions, and began searching his automobile. Upon searching, "the Local Deputy found marijuana and drug paraphernalia," and Mr. Ahmed was arrested and transported to the Osage County Jail. (*Id.*). Mr. Ahmed claims that "Local Deputy" entered "a falsified and inaccurate incidental report" and he was subsequently charged with assault and battery with a deadly weapon, possession of a controlled dangerous substance, and unlawful possession of drug paraphernalia. (*Id.*). He posted bond and was released from jail and was subsequently granted a protective order against his ex-girlfriend. On January 16, 2020, the "District Attorney Office" dismissed all charges against him. His insurance company later determined that he was not at fault in the August 5, 2019 collision. (*Id.*).

Plaintiff seeks actual damages in an amount totaling $2,727,700.00 "[b]ecause of defendant's malicious prosecution, abuse of power, and slanderous acts." (*Id.* at 6). The

plaintiff alleges that his damages include business losses, "extreme emotional and mental distress," and "numerous sores and bug bites" he received while confined in the Osage County Jail. (*Id.* at 5-6).

## II. Dismissal Standard

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has stated a claim upon which relief may be granted. To survive dismissal for failure to state a claim, the complaint must allege "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The standard requires that the complaint provide "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. In reviewing a complaint, the court accepts the well-pleaded facts alleged as true and views them in the light most favorable to the plaintiff, but need not accept mere conclusory statements. *See id.* at 556-57; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Because the plaintiff is proceeding pro se, the court construes his complaint liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court does not assume the role of acting as the plaintiff's advocate. *Id.*; *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction to be afforded does not transform "vague and

conclusory arguments" into valid claims for relief. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997); *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).

## III. Discussion

### A. Osage County Deputy Sheriff Donald Laxson

#### 1. Official Capacity

In his motion to dismiss, Mr. Laxson first argues that, because he is a Sheriff's Deputy, rather than the Sheriff, he is not properly sued in an official capacity, as he is not a final policymaker and is not responsible under state law for official policy-making. (Doc. 10 at 3-4). A claim against a government actor in an official capacity "is essentially another way of pleading an action against the county or municipality" he represents and is considered under the standards applicable to § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). Accordingly, the "official capacity" claim asserted against Mr. Laxson is analyzed as a claim against the Osage County Sheriff's Office.

To hold a county / municipality liable under § 1983, a plaintiff must demonstrate (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. "that there is a direct causal link between" the policy or

custom and the injury alleged). *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

"When an officer deprives a citizen of a constitutional right, . . . municipal governments may incur liability under § 1983 when 'the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'" *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) (quoting *Monell*, 436 U.S. at 690). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482-83 (1986); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-28 (1988).

State law is determinative of whether a particular official is one with "final policymaking authority." *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737 (1989); *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785-86 (1997). Under state law, county sheriffs are the officials charged with final policy-making authority regarding operations of a sheriff's office. *See Okla. Stat.* tit. 19, §§ 131, 516, 547. Deputy Laxson was not the Sheriff, and the Complaint contains no allegations that he exercised any authority delegated to him by the Sheriff. He was accordingly not the final policymaker or the chief law enforcement officer whose actions could give rise to official capacity liability upon the Osage County Sheriff's Office.

In any event, Mr. Ahmed's Complaint does not provide any factual assertions which, if true, would state a plausible claim for official capacity liability / municipal liability under *Monell*. There are no facts in the Complaint identifying any alleged county policy or custom by any official with final policymaking authority. The Complaint is likewise devoid of any factual assertions that plaintiff's constitutional rights were violated as a direct result of any policy. No direct causal link of any violation of civil rights directly resulting from any official county policy can be gleaned from the Complaint. *See Harris*, 489 U.S. at 385; *Monell*, 436 U.S. at 694. Accordingly, the Complaint does not state a claim for official capacity liability, and the official capacity claim against Deputy Laxson should be dismissed for failure to state a claim.

### 2.     Individual Capacity

The factual allegations of the Complaint do not reference Deputy Laxson by name. (*See* Doc. 1 at 5). Instead, Mr. Ahmed's recitation of facts refers to a "Local Deputy" who purportedly asked Mr. Ahmed questions, searched his vehicle, found marijuana and drug paraphernalia, and provided a "falsified and inaccurate incidental report." (*Id.*). Liberally construing the factual allegations of the Complaint, plaintiff appears to assert claims against Deputy Laxson for malicious prosecution and slander. (*Id.* at 6). His Complaint also refers to violations of the Fourth, Fifth, and Sixth Amendments and *Okla. Stat.* §§ "21-781" and "21-771."

The Court construes Mr. Ahmed's references to 21-781 and 21-771 as an attempt to assert claims under *Okla. Stat.* tit. 21, §§ 781 and 771. Sections 771 and 781 are criminal

libel and slander statutes providing for misdemeanor penalties. There is no legal basis for asserting civil claims under those state statutes in a Complaint filed pursuant to 42 U.S.C. § 1983, which is a federal statute for vindicating *federal* rights. *See Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, . . . he has stated no cognizable claim under § 1983."); *see also Adickes v. Kress & Co.*, 398 U.S. 144, 150 (1970) (Section 1983 plaintiff must establish deprivation of a right under federal law or the United States Constitution); *Jones v. City & County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988) ("Section 1983 does not, however, provide a basis for redressing violations of *state* law, but only for those violations of *federal* law done under color of state law.").

Even assuming plaintiff may pursue such state law claims against the defendants, his § 1983 Complaint is devoid of any non-conclusory factual assertions that would state claims for libel or slander under Oklahoma law. To state a claim for defamation, a plaintiff must allege facts to show (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication. *Mitchell v. Griffin Television, LLC*, 60 P.3d 1058, 1061 (Okla. Civ. App. 2002) (citation omitted). Mr. Ahmed alleges that a "Local Deputy" prepared "a falsified and inaccurate incidental report," yet the Complaint contains no factual allegations identifying alleged falsities or any unprivileged publication to a third party.

Turning to Mr. Ahmed's federal claims, there are no factual assertions in the Complaint that plausibly allege any violation of Fourth, Fifth, or Sixth Amendment rights.[2] The Sixth Amendment provides that the accused in a criminal prosecution "shall enjoy the right to a speedy and public trial, by an impartial jury . . . ; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Mr. Ahmed has alleged no facts that state a plausible claim for a violation of any Sixth Amendment rights. (*See* Doc. 1).

The Fifth Amendment provides a right to indictment by a grand jury for felony offenses, the right to avoid being tried twice for the same offense, the right not to testify or otherwise incriminate oneself, the right to due process of law, and a prohibition of the government taking private property without just compensation. U.S. Const. amend. V. The facts alleged in the Complaint do not even touch on any potential Fifth Amendment right.

To the extent that Mr. Ahmed is attempting to assert a malicious prosecution under the Fourth Amendment, he must aver facts plausibly showing, among other things, that the

---

[2] Most amendments within the Bill of Rights, which constrain federal action, have been determined to apply to state action through the Due Process Clause of the Fourteenth Amendment. *See, e.g., Gideon v. Wainwright*, 372 U.S. 335, 343 (1963) (Sixth Amendment right to counsel applies to state action through the Fourteenth Amendment); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 791 (2010) ("[T]he Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in [prior Supreme Court precedent]."). Although Mr. Ahmed's Complaint does not cite the Fourteenth Amendment, the Court construes his Complaint as alleging violations of the cited amendments by incorporation into the Fourteenth Amendment.

defendant's actions caused the wrongful initiation of charges without probable cause and there was a favorable termination of the underlying criminal case against plaintiff. *See Thompson v. Clark*, 596 U.S. ---, 1338, 1340-41 (2022). The element of favorable termination in plaintiff's favor does not require that the action ended with an affirmative indication of innocence. *Id.* at 1340-41. The wrongful initiation of charges without probable cause is the gravamen of a malicious prosecution claim under § 1983. *Id.* at 1337.

Mr. Ahmed's Complaint does meet the favorable termination element, as he avers that "all charges were dismissed." (Doc. 1 at 5). However, as to the gravamen of the malicious prosecution claim – the wrongful initiation of charges without probable cause – the Complaint does not include "enough facts to state a claim to relief that is plausible on its face" or contain statements of facts that would "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56.[3]

While Mr. Ahmed alleges in conclusory fashion that "Local Deputy" prepared "a falsified and inaccurate incidental report," the Complaint contains no *facts* that would indicate a false report. The plaintiff has not identified any portion of the report that was

---

[3] "The standard of probable cause does not require indubitable or necessarily convincing evidence, but only so much 'reasonably trustworthy information' as 'to warrant a prudent man in believing that the [arrestee has] committed or [is] committing an offense.' . . . '[T]he term probable cause . . . means less than evidence which would justify condemnation,' and . . . may rest upon evidence which is not legally competent in a criminal trial." *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1450 (10th Cir. 1985) (internal citation and alteration omitted).

falsified, any particular statement made by Deputy Laxson that was allegedly inaccurate, or any basis for plausibly alleging a lack of probable cause. Indeed, the face of the Complaint includes an allegation that would support a finding that probable cause existed to arrest Mr. Ahmed on at least the controlled substance and paraphernalia possession charges, as Mr. Ahmed asserts that "the Local Deputy found marijuana and drug paraphernalia" upon searching plaintiff's vehicle. (Doc. 1 at 5). Accordingly, the Complaint does not state a plausible claim for malicious prosecution against Deputy Laxson, and this claim should be dismissed.[4]

### B. Osage Nation Police Officer Michael Fish

#### 1. Tribal Sovereign Immunity

Michael Fish, an Osage Nation police officer, is sued in his official capacity as the "Osage Nation Police Department." (*Id*. at 3). He moves initially for dismissal under Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction because Officer Fish, as well as the Osage Nation Police Department, are immune from suit based upon tribal sovereign immunity. (Doc. 16 at 3-7).

Tribal sovereign immunity is a matter of subject matter jurisdiction, properly raised by motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Miner Elec., Inc. v. Muscogee*

---

[4] Deputy Laxson also asserts that he is entitled to qualified immunity. Because the Complaint contains so few factual allegations and does not state a claim, the undersigned recommends dismissal without prejudice for failure to state a claim. Due to the absence of factual allegations, there are insufficient facts to conduct a thorough qualified immunity analysis at this time and a determination of qualified immunity would be premature.

10

*(Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007) (quoting *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-03 (10th Cir. 2001)). Indian tribes possess "the same common-law immunity from suit traditionally enjoyed by sovereign powers." *Id.* (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). Thus, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Tech., Inc.*, 523 U.S. 751, 754 (1998); *see Native Am. Distrib. v. Seneca-Cayuga Tobacco*, 546 F.3d 1288, 1293 (10th Cir. 2008) (tribal sovereign immunity may only be overcome by congressional abrogation or a tribal waiver).

To abrogate tribal immunity, Congress must unequivocally express that purpose. *C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001). Similarly, any waiver by a tribe must be unequivocally expressed and clear. *Native Am. Distrib.*, 546 F.3d at 1293-95; *C&L Enters.*, 532 U.S. at 518. "[A] tribe's immunity generally immunizes tribal officials from claims made against them in their official capacities." *Native Am. Distrib.*, 546 F.3d at 1296.

"[T]ribal officials are immunized from suits brought against them *because of* their official capacities – that is, because the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe." *Id.* (emphasis in original). The courts thus "ask whether the sovereign 'is the real, substantial party in interest.'" *Id.* at 1296-97 (quoting *Frazier v. Simmons*, 254 F.3d 1247, 1253 (10th Cir. 2001)). "Tribal sovereign immunity generally extends to tribal officials acting within the scope of their official

11

authority. On the other hand, a tribe's sovereign immunity does not extend to an official when the official is acting as an individual or outside the scope of those powers that have been delegated to him." *Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1180 n.6 (10th Cir. 2010) (internal citation and quotation marks omitted); *see also Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011).

Here, Mr. Ahmed checked the boxes on the form Complaint indicating Officer Fish is a defendant in his individual and official capacities. Applying the above-cited law, the official capacity claims against Officer Fish, which are in essence claims against the Osage Nation Police Department, are barred by sovereign immunity to the extent of the Osage Nation's tribal sovereign immunity. Article Nineteen of the Osage Nation Constitution expressly states:

> Section 1. Immunity of Osage Nation from Suit: As a sovereign Indian nation, the Osage Nation and all administrative offices, departments, agencies, and instrumentalities of the Osage Nation shall be immune from suit or process in any forum except to the extent that the Osage Nation Congress expressly waives its sovereign immunity. The Osage Nation's sovereign immunity shall extend to officials and employees of the Osage Nation when acting within the scope of their duties and authority.

Article XIX, § 1, Osage Nation Const. The Osage Nation has not waived sovereign immunity for any of the claims asserted against Officer Fish in the Complaint. With respect to the naming of Officer Fish as a defendant in his individual capacity, Mr. Ahmed actually identifies the Osage Nation Police Department as the defendant in the Complaint's caption, while he names Michael Fish of the Osage Nation Police Department in the body of the

Complaint. (Doc. 1 at 1, 3). Mr. Ahmed further alleges that all defendants "were employed by their respective employers and acted in furtherance of their employers [sic] business intrests [sic]." The Complaint's factual allegations appear to only reference Officer Fish in one sentence: "About 45 minutes after [plaintiff's] initial 911 call, *Tribal* and Local Deputy arrived." (*Id.* at 5) (emphasis added). That single sentence appears to be the only factual allegation relating to Officer Fish, inasmuch as he is a "Tribal" officer. (*See id.*). Mr. Ahmed's only allegation relating to Officer Fish is plainly one against him while he was acting within the scope of his duties as an Osage Nation police officer. It is also clear that the Osage Nation Police Department is the real, substantial party in interest, such that tribal sovereign immunity extends to plaintiff's claim against Officer Fish. *See Native Am. Distrib.*, 546 F.3d at 1296 (internal citation omitted) (courts ask whether the "sovereign 'is the real, substantial party in interest.'").

For the foregoing reasons, the undersigned recommends that the motion of Officer Fish to dismiss pursuant to Rule 12(b)(1) be granted, and the claims against him in his official and individual capacities be dismissed.

### 2. Failure to State a Claim

Even if the plaintiff's claims against Officer Fish were not barred by tribal sovereign immunity, the plaintiff has failed to state a claim for official capacity / municipal liability against the Osage Nation Police Department or Officer Fish individually. Because the only factual allegation that could be construed as applying to Officer Fish merely asserts that he arrived at the location of the 911 call (*see* Doc. 1 at 5), the Complaint does not state a

13

plausible claim for relief against Officer Fish. The plaintiff does not allege that he was involved or participated in any conduct violating the plaintiff's rights. Moreover, the Complaint contains no assertion that any policy or custom of the Osage Nation Police Department was a moving force or directly caused any constitutional violation such as is required to state a municipal liability claim. *See Monell*, 436 U.S. at 694. For these reasons, the Complaint is also properly dismissed as to Officer Fish under Rule 12(b)(6), as there is no claim stated against Officer Fish, individually or officially.[5]

      C.    **Osage County District Attorney Diane Hanmer**

The caption of plaintiff's Complaint identifies the Osage County District Attorney as a defendant. (Doc. 1 at 1). In the body of the Complaint, the plaintiff lists former prosecutor Diane Hanmer and checks the boxes indicating that she is sued individually and in her official capacity. (*Id.* at 2). However, there is no mention of any fact that would state any claim against her individually or in her official capacity as a prosecutor for the Osage County District Attorney's Office.

Hanmer herself is not mentioned in the plaintiff's factual recitation. (*See id.* at 5). The only specific factual averments that appear to relate to the Osage County District Attorney are that (1) Mr. Ahmed was "charged and arrested with 3 counts that included: (assault & battery with a deadly weapon, possession of controlled dangerous substance,

---

[5] With respect to the elements of claims referenced in the Complaint, the Court incorporates the discussion of the § 1983 claims at Part III.A above in relation to the claims against Deputy Laxson. There are no facts alleged against Officer Fish that would satisfy any element of any claim referenced in the Complaint.

unlawful possession of drug paraphernalia.),'" and (2) subsequently, "all charges were dismissed by District Attorney Office." (*Id.*). There is no allegation that the Osage County District Attorney or prosecutor Hanmer were aware of any alleged absence of probable cause to charge him with the identified offenses or that they otherwise acted improperly. The Complaint thus does not state any plausible claim against her individually or officially.

As to the official capacity claim, the Complaint also contains no facts that would support any claim under *Monell*, as there are no factual allegations that support an underlying constitutional violation, and the plaintiff does not allege that any District Attorney policy or custom was in place that was the moving force behind any such violation. *City of Canton*, 489 U.S. at 385; *Monell*, 436 U.S. at 694. Accordingly, the claims against Diane Hanmer, individually and officially, should be dismissed.

**IV.    Conclusion and Recommendation**

Based on the foregoing, the undersigned recommends that (1) plaintiff's claims against Osage Nation Police Officer Michael Fish, in his individual and official capacities, be dismissed without prejudice for lack of subject matter jurisdiction based upon tribal sovereign immunity, and (2) plaintiff's Complaint and all claims therein be dismissed without prejudice for failure to state a claim.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation within 14 days. Any such objections must be filed on or before October 11, 2023. If specific written objections are timely filed, the District Judge will "determine de novo any part of the magistrate judge's

disposition that has been property objected to" and may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule," which provides that the failure to make timely objections to the magistrate judge's findings or recommendations waives appellate review of factual and legal questions. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1069 (10th Cir. 1996) (citation omitted). Only a timely, specific objection will preserve an issue for de novo review.

DATED this 27th day of September, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge